IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

**Keast Enterprises, Inc., et al.,**[1]   Case No. **18-00856-als11**

    Debtor.

**Cyclone Cattle, L.L.C.,**   Adv. Pro. **19-30042-als**

               Plaintiff(s)

    v.

**Vorthmann Legacy Farms, LLC,**
**Aaron A. Vorthmann and Teri S.**
**Vorthmann,**
               Defendant(s).

**MEMORANDUM OF DECISION**

**(date entered on docket: February 25, 2020)**

    Before the Court is the Debtors' request for declaratory judgment on the effect and applicability of a Manure Stockpiling Agreement entered into between Cyclone Cattle, LLC and Aaron and Teri Vorthmann.[2] Jurisdiction of this matter arises under 28 U.S.C. sections 157(b)(1) and 1334. For the reasons that follow the Court concludes that the Manure Stockpiling Agreement is not a valid easement which is enforceable against the real estate where the feedlot is located.

    In May 2007 Aaron and Teri Vorthmann[3] sold a 5,000 head capacity cattle feedlot to Cyclone Cattle for $1,600,000.00. According to the Purchase Agreement the following assets

---

[1] The consolidated Debtors in this proceeding are In re Cyclone Cattle, L.L.C. (Case No. 18-00858-als11) and In re Hatswell Farms, Inc. (Case No. 18-00859-als11).
[2] Although Vorthmann Legacy Farms, LLC is a named defendant nothing contained in the record before the Court indicates that this entity is a party to the Manure Stockpiling Agreement.
[3] The Sellers also included the Vorthmanns as the sole shareholders of an Iowa corporation identified as Blue Spruce Feedlots.

were sold: real estate, goodwill, intangibles, personal property and easements. That document states the Sellers will convey to the Buyer "a well water easement, wastewater easement and containment structure maintenance easement on Sellers' adjacent real property, and *manure stockpiling easements on Sellers' real property*." (emphasis added). There is no dispute that the well water easement, wastewater easement and maintenance easements were properly granted by the Vorthmanns and recorded. Since that sale the Vorthmanns and Cyclone have had multiple disagreements related to these easements. The current dispute arises from a document entitled "Manure Stockpiling Agreement" (MSA) that was signed by the parties and filed of record. The Vorthmanns contend that the MSA is an easement that must be included in any sale of the feedlot. The Debtors disagree.

An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific and limited purpose." Black's Law Dictionary (10th ed. 2014). Under Iowa law an easement can be created by express grant or reservation, by prescription, by necessity or by implication. *Nichols v. City of Evansdale*, 687 N.W.2d 562, 568 (Iowa 2004). Common to any of the easements recognized under Iowa law is the legal interest of: "a liberty, privilege, or advantage in land that is distinct from ownership" of the land. § 10:2.Creation of easements—In general, 17 Ia. Prac., Real Estate Law and Practice § 10:2 (2019-2020 ed.) citing *Keokuk Junction Ry. Co. v. IES Indus., Inc.,* 618 N.W.2d 352, 355 (Iowa 2000); *Newport v. Dulin*, No. 05-1233, 2006 Iowa App. LEXIS 1806, at *11 (Ct. App. Nov. 30, 2006). The major flaw in the Vorthmanns' argument is that the MSA does not burden Cyclone's real estate in any way.

"An express grant of an easement must be in writing, and the grantor's intent to create an easement burdening particular property for the benefit of another must be clearly and unmistakably communicated." 25 Am Jur 2d Easements and Licenses in Real Property §14. "The writing must contain a description of the land that is to be subjected to the easement with sufficient clarity to locate it with reasonable certainty." *Id.*; *Nichols*, 687 N.W.2d at 568 (reasoning that an express easement must be in writing because it is an interest in land and therefore subject to the statute of frauds). "[N]o magic words or terms of art are necessary to create an easement. In determining the existence of an easement, the intention of the parties is of paramount importance." *Gray v. Osborn*, 739 N.W.2d 855, 861 (Iowa 2007); citing Restat 3d of Prop: Intent to Create a Servitude § 2.2 cmt. d (2000). Express easements have been upheld in writings which specifically delineate

2

Case 19-30042-als    Doc 31    Filed 02/25/20    Entered 02/25/20 10:55:30    Desc Main
                                  Document      Page 3 of 4

the dimensions, location and purpose of the easement. § 10:3.Creation of easements—Express easement, 17 Ia. Prac., Real Estate Law and Practice § 10:3 (2019-2020 ed.).

The MSA does not meet the standards to be construed as an express easement under Iowa law. Cyclone is merely identified as the owner of the feedlot. Unlike the other easements entered into between the parties there is no grant of an interest in the legally described real estate. The Vorthmanns ignore the terms of the Purchase Agreement that clearly state that they, as the Sellers, granted all of the identified easements in their own real estate. Nothing in the MSA can be construed as providing or reserving any access to, or use of, Cyclone's land to the Vorthmanns. The agreement between the parties simply states that "Cyclone Cattle will, *from time to time and at its expense,* haul all manure generated by the livestock at the feedlot" to real estate designated by the Vorthmanns. (emphasis added). Pre-petition state court litigation and mediation served to detail additional requirements related to deliveries but did not in any way convert the MSA into an easement.

Vorthmanns contend the parties' intent is paramount in determining whether an easement exists. Nothing in the record supports a conclusion that the parties intentions created an easement permitted under Iowa law.

Easements by implication are applied, or implied, in situations where a portion of land, to which a benefit has been conferred or a burden has been imposed, is conveyed to a purchaser who then benefits from the easement or takes the land with the servitude. *Nichols*, 687 N.W.2d at 569; *Bray v. Hardy*, 82 N.W.2d 671, 673 (1957). This type of easement is imposed under the law where it is inferred that such a result was intended by the parties to the transaction, although the parties did not express it. *Schwob v. Green,* 215 N.W.2d 240, 242–43 (Iowa 1974). An easement by implication arises when the following elements are met:

> (1) a separation of the title; (2) a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and (3) it must appear that the easement is continuous rather than temporary, and (4) that it is essential to the beneficial enjoyment of the land granted or retained.

*Brede v. Koop*, 706 N.W.2d 824, 830 (Iowa 2005) citing *Hardy,* 82 N.W.2d at 673. The MSA indicates that its terms are perpetual unless the feedlot does not operate at the location for 24 consecutive months at which point it will automatically terminate. An easement by necessity is a

form of implied easement but is recognized as a separate and distinct category from easement by implication as it does not require a showing that the parties intended the easement to exist. *Schwob*, 215 N.W.2d at 244. Easements by necessity are most commonly implied in situations where a landowner conveys to another a landlocked portion of their land in order to provide the landlocked purchaser with access to a public road. *Nichols*, 687 N.W.2d at 568 (citing 1 Restat 3d of Prop: Servitudes, § 2.15 cmt. b (2000)). Once an easement by necessity is established, the easement will last as long "as the necessity that gave rise to its creation continues." Restat 3d of Prop: Servitudes, § 4.3 (3rd 2000); *JP Morgan Chase Bank v. Nichols*, 828 N.W.2d 326 (Iowa Ct. App. 2013). Finally, an easement by prescription is created when "a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Nichols*, 687 N.W.2d at 568; Iowa Code § 564.1; *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001). These circumstances are not demonstrated by the transactions involving these parties.

The Vorthmanns' intent in entering into the MSA appears to be control of the disposition of manure generated by the feedlot for their own economic benefit. Mindy Larsen Poldberg, *A Practitioner's Guide to Iowa Manure Laws, Manure Regulations, and Manure Application Agreements*, 3 DRAKE J. AGRIC. L. 433, 461 (1998). The MSA is nothing more, and nothing less, than a contract for the unspecified delivery of manure to places designated by the Vorthmanns. A determination that the MSA qualifies as an express easement, or an easement by implication, necessity or prescription is not supported by the record.

**IT IS HEREBY ORDERED**

1.    The Manure Stockpiling Agreement executed by the parties is not an easement under Iowa law.

2.    The parties shall bear their own costs.

3.    Judgment shall enter accordingly.

/s/ Anita L. Shodeen  
Anita L. Shodeen  
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding